UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

-----------------------------------------------------------x      FILED 23 DEC '24 15:31 USDC-ORE

Douglas Lee Foust,
Lauren Mercede Krause/Foust, and
Austin Lee Foust,

        Plaintiffs,

    -against-

Janna Kirstin Roseland,

        Defendant.

-----------------------------------------------------------x

COMPLAINT

6:24-cv-02137-MC

Plaintiffs for their complaint respectfully show and allege the following:

## INTRODUCTION

1. This is an action seeking a temporary restraining order, preliminary and permanent injunction ordering defendant, among other things, to return the chattels and property to the plaintiffs immediately. Plaintiffs also seek damages for conversion, and fraud and misrepresentation, as well as punitive damages.

## JURISDICTION

2. Jurisdiction of this court is founded on diversity of citizenship under 28 U.S.C. §§ 1332, 1441.

3. Plaintiffs are citizens of the State of Oregon, residing at Oakland, Oregon.

4. Defendant is a citizen of the State of Washington, residing at 7714 NE

1

39th Ct UNIT M133, Vancouver, WA 98665- 9275. The amount in controversy exclusive of interest and costs exceeds $75,000.

3. The court has personal jurisdiction over the defendant because acts underlying the complaint occurred in the State of Oregon.

## BACKGROUND FACTS

4. Plaintiff Douglas Lee Foust ("Douglas") and defendant Roselund shared a residence from approximately July 2014 to February 14, 2024. Miss Roselund resided at 540 Stearns Lane, Oakland, OR 97462, which belonged to Mr. Foust.

5. Defendant Roselund and Douglas engaged in a personal romantic relationship during the initial stages of the occupancy. Approximately four to five years ago, the relationship transitioned to a platonic nature. Defendant Roselund occupied her own separate living quarters, which included a sleeping area, separate dressing/closet room, separate bathroom facilities, separate kitchen facilities, and a separate entrance from Mr. Foust.

6. Despite this, they were housed in the same building, which spans approximately 10,000 square feet. She also stowed a number of personal items in the garage area on the first floor. There is no registered relationship, domestic partnership, or marriage. Additionally, there were no financial obligations, including third-party loan agreements, tax returns, insurance policies, medical expenses, credit card obligations, shared bank accounts, and so forth.

7. As a lessee of Douglas's property, Roselund maintained her own renters policy. Roselund was permitted to occupy these areas of the building without compensation to Mr. Foust due to her disability and her primary source of income, social security, which amounts to approximately $1435 per month.

8. Defendant Roselund maintained her mailing address at her mother's residence in Roseburg, OR, which is located at 3777 Joseph St, Roseburg, OR 9740 (refer to the driver's license above). A few parcels and mail were received on her behalf at the 540 Stearns Lane, Oakland address.

9. Douglas and his family of three generations have amassed approximately $300K in precious metals over the course of many years and decades of post-tax income. This amount is based on the current market valuation and includes approximately 109 gold coins - Gold Maple Leaves and American Eagle coins. Furthermore, there were numerous silver coins that had been amassed.

10. At 540 Stearns Lane, Oakland, OR, all of these precious metals were stored in a walk-in vault/safe. Douglas granted Defendant Roselund permission to preserve her "art work" and certain of her writings as a gesture of goodwill.

11. Defendant Roselund was a gifted writer and artist. These items were of significant personal value to her.

12. Douglas, his son Austin, and his daughter Lauren privately and securely

3

guarded the vault/safe combination. Despite the fact that Austin and Lauren had access to the combination, their knowledge of the combination and its contents was to be accessed as required upon Douglas's passing.

13. Every year, Douglas's grandchildren, Sophie, who is four years old, and Gunner, who is one and a half years old, were given coins to be used towards their college fund. The coins were to be held in trust by their parents until they reached the age of majority.

14. The parents continue to maintain custody of the coins that the grand children received.

15. Defendant Roselund required access to her artwork or writings Douglas would temporarily grant her access by opening the safe.

### The Conversion Incident

16. Douglas had a prearranged appointment with Dr. Justin Morse at his office in Eugene, Oregon, on February 14, 2024.

17. Douglas has a consulting with a physician for an extended period of time. When appointments were scheduled in the Eugene area, Douglas would also schedule other miscellaneous duties to ensure that Douglas was away from home for the majority of the day and to be efficient. Defendant Roselund would inquire about the doctor's appointment and the Douglas's assistant's schedule on an

4

ongoing basis prior to this day.

18. Douglas's assistant was employed in an office located at 540 Stearns Lane, Oakland, OR, adjacent to his office. From his desk, he had a view of the parking area, where Defendant Roselund, and he consistently parked.

19. Douglas arrived home very late that day, around 8:00 p.m., and immediately retired to bed. Upon awakening in the morning, he discovered that Defendant Roselund had not remained overnight.

20. Douglas promptly sent her a text message, expressing his usual apprehension regarding her whereabouts.

21. Defendant did respond shortly thereafter with an enigmatic message. She advised Douglas to consult with her attorney. The text contained the name and phone number of her attorney.

22. Upon entering her room, Douglas discovered that the majority of her apparel, as well as numerous personal items like makeup, toiletries, and clothing, appeared to have been missing. Furniture, apparel, and numerous other possessions were abandoned.

23. At that time, Douglas entered the combination of his safe and opened the vault. He stored all of the gold precious metal coins in a black and red tote that was designated "Husky."

24. Douglas discovered that all of the gold coins were missing when he opened the purse. The tote purse contained vinyl binder-style sleeves that contained all of the coins. Each silver coin was seen to be unaltered.

25. At that time, Douglas contacted the authorities to submit a report. Within an hour, Officer Kyle Nelson of the Sutherlin Police Department arrived to commence his investigation. The officer informed me that he was documenting the entirety of his visit with his body camera. We traversed the building, entered the vault, and examined defendant's living quarters. Additionally, it was observed that her two cats, "Zoee" and "Bobby," had disappeared.

26. Officer Nelson reviewed the text message he had received earlier that morning and informed Douglas that he would communicate with both defendant and her attorney as part of his inquiry.

27. Officer Nelson has recently completed his report and submitted it to the Douglas County District Attorney's office, which has been underway for more than eight months.

28. After the officer's initial site investigation on February 14, 2024, he did provide me with updates within a week or two through communications with Janna and then the attorney. Officer Nelson was ultimately successful in communicating with defendant via telephone following numerous unsuccessful endeavors.

6

29. Officer Nelson informed plaintiffs that he perceived and experienced an attitude of remorse and an element of criminality during his phone conversation with Defendant. Officer Nelson asked defendant's attorney pointedly whether defendant had removed the precious metals after speaking with her. The counsel informed officer Nelson that they are not claiming to have the coinage or to not have it.

30. Officer Nelson has since informed Douglas that he received a follow-up contact from Gina Boromini, the attorney of record for defendant at Pacific Legal informing him that she was no longer representing her.

## As and for a First Cause of Action

Replevin or (in the Alternative) Conversion

31. Plaintiffs are the owners of and havethe legal right to possession of the aforementioned property defendant removed from the residence.

32. Defendant took the property without permission and in violation of state law, namely ORS 164.055, Theft in the First Degree, a class C felony, that can result in up to five years in prison and a fine of up to $125,000.

33. Plaintiffs have demanded the return of the property and defendant has failed to return same.

34. Plaintiff is entitled pursuant to its action in replevin to an order of seizure

7

of its property that is in the possession of defendant, or to an injunction directing defendant to return the property forthwith to plaintiff, because Defendant took the personal property wrongfully as plaintiffs had not abandoned the property, and there was no court order awarding Defendant possession of the premises.

35. In the alternative, to the extent Defendant has converted Plaintiffs' property to her own use prior to the return of all or some of the property, plaintiff is entitled to compensatory damages in the sum of at least $272,000.

36. Defendant had a fiduciary duty to identify, account for, and properly distribute any and all assets taken.

37. Upon information and belief, certain assets have not been accounted for.

38. Plaintiff is entitled to a full accounting to determine the exact value of any funds or assets of Ms. Puleo which have not been accounted for.

### Punitive Damages

39. Defendant has intentionally stolen property belonging to plaintiffs.

40. Defendant's conduct constitutes a class C felony.

41. It is necessary to punish defendant for such egregious conduct and to deter defendant and any other person who might consider similar conduct in the future.

52. Accordingly, punitive damages in the discretion of the Court.

WHEREFORE, plaintiff respectfully prays that this court:

1. Enter a temporary restraining order, an order of seizure, a preliminary injunction, and a permanent injunction directing defendant to deliver to plaintiffs forthwith all property taken from them that are in her possession;

2. Enter a money judgment of least $272,000.

3. Enter a judgment directing her to account for the property taken;

4. Enter a judgment against defendant for punitive damages;

5. Award plaintiffs costs; and

6. Grant plaintiffs such other and further relief as may be just and proper.

Dated: November 12, 2024

Respectfully submitted,

Douglas Lee Foust
540 Stearns Lane
Oakland, Oregon 97462
Cell: 925-202-4281
email: doug@thcottages.com

Lauren Mercede Krause/Foust (Daughter)
1637 Cole Rd
Oakland, Oregon 97462
Cell: 925-202-7895
email: lmfoust@ucdavis.edu

Austin Lee Foust (Son)
540 Stearns Lane
Oakland, Oregon 97462
cell: 925-918-7766
email: austin@thcottages.com

WHEREFORE, plaintiff respectfully prays that this court:

1. Enter a temporary restraining order, an order of seizure, a preliminary injunction, and a permanent injunction directing defendant to deliver to plaintiffs forthwith all property taken from them that are in her possession;

2. Enter a money judgment of least $272,000.

3. Enter a judgment directing her to account for the property taken;

4. Enter a judgment against defendant for punitive damages;

5. Award plaintiffs costs; and

6. Grant plaintiffs such other and further relief as may be just and proper.

Dated: November 12, 2024

Respectfully submitted,

Douglas Lee Foust
540 Stearns Lane
Oakland, Oregon 97462
Cell: 925-202-4281
email: doug@thcottages.com

Lauren Mercede Krause/Foust (Daughter)
1637 Cole Rd
Oakland, Oregon 97462
Cell: 925-202-7895
email: lmfoust@ucdavis.edu

Austin Lee Foust (Son)
540 Stearns Lane
Oakland, Oregon 97462
cell: 925-918-7766
email: austin@thcottages.com

9